UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| PAUL CARNES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:24-cv-01445-SLD-RLH |
| | ) | |
| CONSOLIDATED GRAIN AND BARGE | ) | |
| CO., | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

Before the Court is Defendant Consolidated Grain and Barge Co.'s ("CGB") Motion to

Dismiss Plaintiff's Complaint ("Motion to Dismiss"), ECF No. 13, and Plaintiff Paul Carnes's

Agreed Motion to Withdraw His Request for a Declaratory Judgment Action ("Consent

Motion"), ECF No. 17. For the reasons below, the Court GRANTS CGB's Motion to Dismiss

and GRANTS Carnes's Consent Motion.

**BACKGROUND**[1]

On or about October 14, 2019, Carnes injured his back while working for CGB. Compl.

¶¶ 3, 9, Not. Removal Ex. A, ECF No. 1-1 at 1–6. As part of the employment agreement, CGB

was required to pay Carnes's medical expenses. *Id.* ¶ 4. Pursuant to its obligations under the

Illinois Workers' Compensation Act ("IWCA"), 820 ILCS 305/1–30, CGB contracted with

Nationwide Agribusiness Insurance Company ("NAIC") to provide its employees with workers'

compensation insurance for injuries arising out of and in the course of employment. *Id.* ¶ 5. As

for medical costs that did not arise out of work, CGB self-insured those claims pursuant to a plan

---

[1] Unless otherwise noted, the factual allegations are taken from the Complaint, Not. Removal Ex. A, ECF No. 1-1 at
1–6, and are accepted as true for purposes of resolving the Motion to Dismiss, *Lax v. Mayorkas*, 20 F.4th 1178, 1181
(7th Cir. 2021).

governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§

1001–1461, and administered by HMO Louisiana, Inc ("HMOLA").  *Id.* ¶ 6.  On November 1,

2019, Carnes obtained medical care from the OSF St. Mary Medical Center "as a result of a back

injury that occurred at the [CGB] business location," for which he was billed just over $220,000

in total.  *Id.* ¶¶ 8, 17–18.

On April 8, 2020, pursuant to the IWCA, Carnes filed a claim with the Illinois Workers'

Compensation Commission (the "Commission") against CGB in which he asserted that he

twisted his back and injured his L4–L5 disc in the course of his employment.  *Id.* ¶ 10; *see also*

Settlement Contract Lump Sum Petition & Order ("Settlement Order"), Compl. Ex. A, ECF No.

1-1 at 7–10.[2]  On October 18, 2021, Carnes notified HMOLA that the IWCA case was likely to

be settled with CGB, but that NAIC disputed its liability to pay unqualified medical expenses.

Compl. ¶ 11.  Specifically, NAIC disputed that Carnes's injuries were work-related and

consequently, HMOLA would be responsible for paying the medical bills at issue.  *Id.*  On

January 10, 2022, Carnes notified HMOLA that the IWCA case would be submitted to an

arbitrator, and that NAIC continued to dispute whether the injury sustained by Carnes was work-

related.  *Id.* ¶ 12.

On April 8, 2022, a settlement of the IWCA case was approved by the Commission.

*Id.* ¶ 13; *see also* Settlement Order 4.  As to medical expenses, the Settlement Order

acknowledged that CGB had "not paid all medical bills," and it noted that Carnes "was covered

by private health insurance during his time of treatment."  Settlement Order 2.  Per the terms of

---

[2] On review of a motion to dismiss under Rule 12(b)(6), district courts are free to consider "any facts set forth in the complaint that undermine the plaintiff's claim," *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (quotation marks omitted), and "may consider documents attached to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to his claim," *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (quotation marks omitted).

the agreement, Carnes accepted $15,000 from CGB in "full and final settlement of any and all claims under the [IWCA] for accidental injuries allegedly incurred on or about October 14, 2019 and/or November 1, 2019." *Id*.  In addition, CGB "dispute[d] liability for any and all medical bills, charges and expenses allegedly incurred" from those two dates. *Id*.  The Settlement Order was "made to end all litigation between the parties." *Id*.  After deductions for attorney's fees ($3,000) and medical costs ($490.59), Carnes received $11,509.41 from the settlement. *Id*.

On August 22, 2022, Carnes received a letter from OSF Healthcare indicating that the HMOLA required additional information to process the outstanding balance of $190,984.20. Compl. ¶ 17.  Soon after, on September 8, 2022, Carnes received a collection notice for outstanding charges at OSF Multi-Specialty Group for $30,225. *Id*. ¶ 18.  Although HMOLA paid other medical expenses for Carnes between February 23, 2019 and January 8, 2020, the medical expenses incurred on November 1, 2019 remained unpaid. *Id*. ¶ 16.

Carnes sued HMOLA to compel payment of these outstanding medical bills. *See generally Carnes v. HMO La., Inc.* (*Carnes I*), No. 4:22-cv-04179-SLD-JEH, 2023 WL 6020534 (C.D. Ill. June 26, 2023), *aff'd*, 114 F.4th 927 (7th Cir. 2024).  In that case, Carnes stated that HMOLA, as the plan administrator for CGB, was contractually responsible under Illinois state law for payment of his medical expenses. *Id.* at *2.  HMOLA moved to dismiss, arguing that Carnes's state-law claims were preempted by ERISA. *Id.* at *3–4.  The Court agreed and granted HMOLA's motion, but granted Carnes leave to amend his complaint to assert an ERISA claim. *Id.* at *4–5.  Instead of amending his complaint, Carnes filed a motion for reconsideration which this Court ultimately denied, and the Seventh Circuit affirmed. *See Carnes v. HMO La., Inc.*, 114 F.4th 927, 930 (7th Cir. 2024) ("Fatal to Carnes's state law claim is ERISA's exclusive civil enforcement provision: 29 U.S.C. § 1132(a).").

On October 9, 2024, Carnes filed suit against CGB in state court asserting two counts for breach of contract and breach of the duty of good faith and fair dealing. *See* Compl. ¶¶ 22–30. CGB timely removed to federal court on the basis of diversity jurisdiction and the case was transferred to the Rock Island Division. *See generally* Not. Removal, ECF No. 1; Nov. 6, 2024 Text Order (Hawley, M.J.). This Court maintains subject-matter jurisdiction over this action because the parties are diverse and the amount in controversy is alleged to exceed $75,000. *See* 28 U.S.C. § 1332(a)(1).[3] CGB now moves to dismiss the Complaint with prejudice arguing that Carnes's claims are barred by IWCA and ERISA, and that Carnes fails to state a claim. *See generally* Mem. L. Supp. Mot. Dismiss, ECF No. 14.

## DISCUSSION

### I.    Consent Motion

In his response opposing CGB's Motion to Dismiss, Carnes requested the Court's leave to join OSF Healthcare System and OSF Multi-Specialty Group as Defendants and to amend his Complaint to add a declaratory judgment claim to determine "whether the underlying dispute in this case, being the medical bills owed to OSF Healthcare System and OSF Multi-Specialty Group . . . is now moot as a result of the passage of time beyond the applicable statute of limitations for those claims." Resistance Mot. Dismiss 2, ECF No. 15. The parties conferred and now agree that Carnes's request to add Defendants and a declaratory judgment claim "is not necessary and would be a waste of judicial resources." Consent Mot. 1. Carnes moves to withdraw "his request to join OSF Healthcare System and OSF Multi-Specialty Group" as Defendants "and to amend the Complaint to add a Count III - Declaratory Judgment Action

---

[3] Carnes is a citizen of Illinois, *see* Compl. ¶ 1, and CGB is a citizen of both Missouri and Louisiana, *see* CGB Corp. Details, Not. Removal Ex. C, ECF No. 1-3; *see also* 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State . . . by which it has been incorporated and . . . where it has its principal place of business . . . ."). Carnes seeks at least $221,209.20 in damages for his unpaid medical bills. *See* Compl. ¶¶ 17–18.

against the new parties." *Id.* The Court GRANTS Carnes's Agreed Motion to Withdraw His Request for a Declaratory Judgment Action.

## II.    Motion to Dismiss

### a.    Legal Standard

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quotation marks omitted); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief").

A court deciding a Rule 12(b)(6) motion "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021). But the court "need not accept as true statements of law or unsupported conclusory factual allegations." *Id.* (quotation marks omitted). "While detailed factual allegations are not necessary to survive a motion to dismiss, [the standard] does require more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to be considered adequate." *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quotation marks omitted).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). A claim must be plausible rather than merely conceivable or speculative, "meaning that the plaintiff must include enough details about the subject-matter of the case to

present a story that holds together." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

### b. Analysis

CGB argues that the Complaint must be dismissed on several bases, including: (1) IWCA provides an exclusive remedy against employers for work-related medical expenses and Carnes already settled his workers' compensation claim with CGB; (2) Carnes's state-law claims are preempted by ERISA and barred by claim preclusion based on *Carnes I*; and (3) Carnes fails to state a claim for breach of contract or breach of the covenant of good faith and fair dealing. Mem. L. Supp. Mot. Dismiss 9–26. Because the IWCA's exclusivity provisions and the Settlement Order are dispositive, the Court need not address CGB's other arguments for dismissal. However, as Carnes brings his second count against CGB for breach of the covenant of good faith and fair dealing as a standalone claim, the Court finds an independent basis to dismiss this count in plain violation of Illinois contract law.

### i. The IWCA's Exclusivity Provisions

"The [IWCA] is designed to provide financial protection to workers for accidental injuries arising out of and in the course of employment." *Meerbrey v. Marshall Field & Co., Inc.*, 564 N.E.2d 1222, 1225 (Ill. 1990). The scheme established by the IWCA "imposes liability without fault upon the employer and, in return, prohibits common law suits by employees against the employer" under its "exclusive remedy" provisions. *Id.* Those provisions are "part of the *quid pro quo* in which the sacrifices and gains of employees and employers are to some extent put in balance, for, while the employer assumes a new liability without fault, he is relieved of the

prospect of large damage verdicts." *Id.* (quotation marks omitted).  The first exclusivity

provision, Section 5(a), provides in pertinent part:

> [N]o *common law or statutory right* to recover damages from the employer . . . for
> injury or death sustained by any employee while engaged in the line of his duty as such
> employee, other than the compensation herein provided, is available to any employee
> who is covered by [the IWCA] . . . .

820 ILCS 305/5(a) (emphasis added).  And the second provision, Section 11, provides:

> [T]he compensation herein provided, together with the provisions of [the IWCA] shall
> be the measure of the responsibility of any employer . . . for *accidental injuries*
> sustained by any employee *arising out of and in the course of the employment* . . . .

*Id.* § 305/11 (emphasis added).

The goal of these clauses is to prevent employees from receiving double compensation

for the same workplace injury—an employee is therefore barred from asserting a common-law

claim for injuries covered by the IWCA.  *Baylay v. Etihad Airways P.J.S.C.*, 222 F. Supp. 3d

698, 702 (N.D. Ill. 2016), *aff'd*, 881 F.3d 1032 (7th Cir. 2018).  When an employer is sued in

common law, as CGB is here, that employer may raise the IWCA's exclusivity bar as an affirmative

defense.  *Id.*  The employer need only establish two elements: (1) the existence of an employment

relationship, and (2) a nexus between the employment and the injury.  *Id.*  Because complaints filed

in federal court need not anticipate affirmative defenses, dismissal under Rule 12(b)(6) based on an

affirmative defense "is appropriate only where the defense is conclusively established by the

complaint, concessions made by the plaintiff, or any other material appropriate for judicial notice."

*Id.* at 703 (quotation marks omitted); *see also Acuff v. IBP, Inc.,* 77 F. Supp. 2d 914, 922 (C.D. Ill.

1999) (finding that the IWCA exclusivity bar "is an affirmative defense that must be pleaded and

proven by the employer").

Once the employer establishes those two elements, the burden shifts to the employee to prove

one of the four exceptions to the IWCA's exclusivity: "(1) that the injury was not accidental; (2) that

the injury did not arise from his or her employment; (3) that the injury was not received during the course of employment; or (4) that the injury is not compensable under the [IWCA]." *Baylay*, 222 F. Supp. 3d at 702–03.

Here, CGB argues that IWCA's exclusivity provisions, 820 ILCS 305/5(a) and 305/11, bar Carnes's state-law claims. Mem. Supp. Mot. Dismiss 9–12. Carnes makes no argument as to whether his claims are abrogated under the IWCA framework.[4]

As for the elements of CGB's affirmative defense, the existence of an employment relationship is a premise of this lawsuit, and the Court accepts as true Carnes's own assertions regarding the nexus between his employment and injury. Specifically, the Complaint alleges that Carnes incurred over $220,000 in medical expenses for the treatment of a back injury he sustained while working as an employee at CGB. *See* Compl. ¶¶ 4, 8–9, 14; *see also Pechan v. DynaPro, Inc.*, 622 N.E.2d 108, 121 (Ill. App. Ct. 1993) ("A nexus exists if the injury occurred within the period of employment, at a place where the employee might reasonably have been, and while he was reasonably fulfilling duties of his employment or doing something incidental thereto." (quotation marks omitted)). Carnes's own representations tend to "plead[] himself out of court by alleging (and thus admitting) the ingredients" of CGB's affirmative defense. *Treadwell v. Power Sols. Int'l, Inc.*, 427 F. Supp. 3d 984, 989 (N.D. Ill. 2019) (quotation marks

---

[4] Generally, nothing about the IWCA expressly precludes the operation of the basic tenets of contract law where a workers' compensation claim is involved—suggesting Carnes would be able to maintain contact claims that were supplemental to his employment contract with CGB. *See, e.g.*, *Fredericks v. Liberty Mut. Ins. Co.*, 627 N.E.2d 782, 786–88 (Ill. App. Ct. 1994). However, the common law contract claims asserted in this action arise from CGB's purported nonadherence to provisions of the Settlement Order approved by the Commission on April 8, 2020. Compl. ¶¶ 22–30. And those provisions themselves arise out of or relate to the compensable liability of CGB under the IWCA. In any event, Carnes makes no argument as to whether the affirmative defense may be raised, and the Court is not inclined to engage with omitted or undeveloped arguments. *See Draper v. Martin*, 664 F.3d 1110, 1114 (7th Cir. 2011) ("It is not this court's responsibility to research and construct the parties' arguments." (quotation marks omitted)); *see also Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.").

omitted).   CGB has satisfied both elements of its affirmative defense, so the burden shifts to Carnes to prove that one of the four exceptions to exclusivity applies.  *Baylay*, 222 F. Supp. 3d at 702–03.

But Carnes makes no attempt to shield his claims under any of the four exceptions.  *See generally* Mem. L. Resistance Mot. Dismiss, ECF No. 16.  As for the first exception, Carnes has presented nothing that would suggest his injury was non-accidental.  *See Pathfinder Co. v. Indus. Comm'n*, 343 N.E.2d 913, 917 (Ill. 1976) ("[T]he term 'accident' is not a technical legal term but encompasses anything that happens without design or an event which is unforeseen by the person to whom it happens." (quotation marks omitted)).  The second and third exceptions are presumptively waived by Carnes's own assertions that his medical expenses billed for services rendered on November 1, 2019, were incurred "as a result of a back injury that occurred at the [CGB] business location" in October 2019.  Compl. ¶ 8.  This fact, presumed true at this stage, suggests that his injury "ar[o]se from his . . . employment" and was "received during the course of his employment." *Meerbrey*, 564 N.E.2d at 1226.  The fourth exception is unmet for similar reasons.  An injury is "compensable" within the meaning of the IWCA if it was suffered in the "line of duty," meaning that the injury "arose out of and in the course of employment." *Folta v. Ferro Eng'g*, 43 N.E.3d 108, 113–14 (Ill. 2015).

CGB properly invoked the IWCA's exclusivity bar and established that it had an employment relationship with Carnes and that a nexus existed between Carnes's injury and his employment with CGB.  Carnes has not met his burden of showing that his injury meets any of the four exceptions.  Accordingly, the Court finds that Carnes's claims against CGB are barred by the IWCA's exclusivity provisions, and his Complaint must be DISMISSED.

### ii.  The Settlement Order

Even if the IWCA did not abrogate Carnes's state-law claims, CGB contends that the
Settlement Order operates as a "release" of all compensable liability for Carnes's injuries.  Mem. L.
Supp. Mot. Dismiss 11–12.  In brief rebuttal, Carnes states that "clearly the actual language of the
agreement did no such thing," arguing that CGB's admission that Carnes was covered by private
health insurance during treatment negates the function of a contractual release on this ground.  Mem.
L. Resistance Mot. Dismiss 4–5.

"A release is a contract wherein a party relinquishes a claim to a person against whom the
claim exists, and a release is subject to the rules governing the construction of contracts."  *Carona v.
Ill. Cent. Gulf R.R. Co.*, 561 N.E.2d 239, 242 (Ill. App. Ct. 1990).  Illinois courts routinely look to the
intent of the parties to ascertain the scope and extent of the release, *Ainsworth Corp. v. Cenco Inc.,*
437 N.E.2d 817, 822 (Ill. App. Ct. 1982), and "this intent is discerned from the language used and the
circumstances of the transaction," *Farmers Auto. Ins. Ass'n v. Kraemer,* 857 N.E.2d 691, 694 (Ill.
App. Ct. 2006) (alterations and quotation marks omitted).  Illinois courts "examine the circumstances
surrounding the transaction without changing the terms or creating an ambiguity."  *Hagene v. Derek
Polling Constr.*, 902 N.E.2d 1269, 1272 (Ill. App. Ct. 2009).  The Court's interpretation of
contractual language in the present case must, therefore, remain consistent with the fundamental
purpose of the IWCA—to promote the "general welfare" of Illinois citizens.  *Id.* at 1273.

The Court now turns to the language of the Settlement Order.  The section entitled "Medical
Expenses" expressly states that CGB "has not paid all medical bills" and that CGB "disputes liability
for any and all medical bills, charges and expenses allegedly incurred" by Carnes from the October
14, 2019 or November 1, 2019 dates.  Settlement Order 2.  It also notes that Carnes "was covered by

private health insurance during his time of treatment." *Id.* Further, pursuant to the "Terms of

Settlement" section, CGB agreed

> to pay and [Carnes agreed] to accept $15,000.00 in *full and final settlement of any*
> *and all claims under the [IWCA] for accidental injuries allegedly incurred on or*
> *about October 14, 2019 and/or November 1, 2019* or otherwise for all accidental
> injuries of any nature, kind or description as a result of *any aggravation of*
> *[Carnes]'s lumbar back condition, degenerative disc disease* including any and all
> results, developments, or sequelae, fatal or non-fatal, resulting or allegedly
> resulting from such aggravation *and whether or not such injuries are compensable*.

*Id.* (emphasis added). The Court finds that this language is clear, unambiguous, and broad

enough to encompass Carnes's current claims. Construing the Settlement Order "as a whole," it is

readily apparent that the first section language informs the meaning of the second section.

*Martindell v. Lake Shore Nat'l Bank*, 154 N.E.2d 683, 689 (Ill. 1958) (recognizing that a contract

must be "construed as a whole, giving meaning and effect to every provision thereof . . . since it will

be presumed that everything in the contract was inserted deliberately and for a purpose"). Therefore,

the Court finds that the release in the Settlement Order bars Carnes's claims against CGB.

### iii. Good Faith and Fair Dealing

Finally, as an independent basis for dismissal of the second count to the Complaint,

Illinois law prevents Carnes from bringing a standalone claim against CGB for breach of the

covenant of good faith and fair dealing. Therein, Carnes alleges CGB breached this duty in

fulfillment of its obligations under the Settlement Order—suggesting CGB's failure to direct its

self-funded plan to resolve his outstanding medical debt was arbitrary, capricious, and

inconsistent with the reasonable expectations of the settlement terms. *See* Compl. ¶¶ 26–30.

Under Illinois law, courts have long held that the covenant of good faith and fair dealing

is "implied in all contracts" and remains "equally present in employment contracts." *Beraha v.*

*Baxter Health Care Corp.*, 956 F.2d 1436, 1444 (7th Cir. 1992). This implication does not,

11

however, afford Carnes with an opportunity to assert "an independent source of duties" arising from the terms of settlement with CGB. *Baxter Healthcare Corp. v. O.R. Concepts, Inc.*, 69 F.3d 785, 792 (7th Cir. 1995); *see also Beraha*, 956 F.2d at 1443 (finding that the covenant merely "guides the construction of explicit terms in the agreement").

The implied duty of good faith owed between Carnes and CGB arises from "specific contract terms and obligations" as agreed upon in Settlement Order and simply requires each party "to refrain from interfering with the performance of contractual obligations." *Kwasnik v. Nat'l R.R. Passenger Corp.*, No. 96 C 1933, 1997 WL 109977, at *3 (N.D. Ill. Mar. 7, 1997). The "proper place" for the assertions set forth in Carnes's second count, therefore, is "within a breach of contract claim itself, not standing alone as its own claim." *Echo, Inc. v. Whitson Co.*, 121 F.3d 1099, 1106 (7th Cir. 1997).

At bottom, Carnes had the opportunity to bring a breach of contract claim as to the Settlement Order, but he chose not to. Dismissal of the second count on this additional, independent basis is therefore warranted.

## CONCLUSION

For the reasons above, Defendant Consolidated Grain and Barge Co.'s Motion to Dismiss Plaintiff's Complaint, ECF No. 13, is GRANTED, and Plaintiff Paul Carnes's Agreed Motion to Withdraw His Request for a Declaratory Judgment Action, ECF No. 17, is GRANTED. This action is DISMISSED WITH PREJUDICE. The Clerk is directed to enter judgment and close the case.

Entered this 13th day of August, 2025.

s/ Sara Darrow
_____
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE
